## SMULYAN et al. v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. November 6, 1923.)

No. 3841.

1. **Intoxicating liquors ⬦150—Single sale for nonbeverage purposes, without seller's permit, to buyer, having buyer's permit, held not illegal.**

The regulations under National Prohibition Act, requiring a seller's permit to sell intoxicating liquor for nonbeverage purposes, apply mainly, if not wholly, to those regularly engaged in the business of selling, and so, where buyer obtained the required buyer's permit to purchase specified liquor from a specified seller, the seller, who was not regularly engaged in the business, was not guilty of violating the law because he did not have a seller's permit.

2. **Intoxicating liquors ⬦146(1)—Delivery of bonded warehouse receipts sufficient to complete sale.**

Delivery of bonded warehouse receipts is sufficient to complete the sale of intoxicating liquor, without manual delivery of the liquor.

3. **Intoxicating liquors ⬦150—Sale of warehouse delivery receipts held not violation of Prohibition Act, when permit issued to warehouseman.**

Where delivery receipts for intoxicating liquor merely called for 100 cases out of the original owner's stock, and showed on their face that, before delivery could be made, a permit made out to the warehouseman must be procured, a sale was not complete until a sufficient permit was obtained, and owners of such receipts, who, under an agreement to sell the liquor for nonbeverage purposes, indorsed them in blank to the warehouseman, were not guilty of violating the Prohibition Act, where a permit was had in due form, except that the warehouseman appeared thereon as vendor.

In Error to the District Court of the United States for the Western Division of the Southern District of Ohio; John W. Peck, Judge.

Martin Y. Smulyan and another were convicted of selling intoxicating liquor in violation of the National Prohibition Act, and they bring error. Reversed and remanded for new trial.

Edward P. Moulinier, of Cincinnati, Ohio (Moulinier, Bettman & Hunt, Graham P. Hunt, and John H. Druffel, all of Cincinnati, Ohio, on the brief), for plaintiffs in error.

R. T. Dickerson, Sp. Asst. Atty. Gen. (Thomas H. Morrow, Sp. Asst. Atty. Gen., and Benson W. Hough, U. S. Atty., of Columbus, Ohio, on the brief), for the United States.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. The plaintiffs in error (hereafter called the vendors) were respondents upon the single count of an indictment charging the sale of intoxicating liquor by them, in violation of the National Prohibition Act (41 Stat. 305), and were convicted. While the indictment is in the most general terms, the record makes clear that the inference of guilt is to be deduced, if at all, from these circumstances:

Prior to January, 1921, the Buse Company, of Cincinnati, owned a quantity of whisky, tax paid, which was stored in the so-called free warehouse of Freiberg & Workum Company (hereafter called Freiberg), at Lynchburg, Ohio. The Johnstown Drug & Chemical Company, of Johnstown, Pa., was a partnership, composed of respondent Smulyan and another. This partnership, by some transaction with Buse in January, 1921, had become entitled to 600 cases of this whisky. To evidence such claim the Buse Company issued to the Drug & Chemical Company six receipts, for 100 cases each, the receipts being in the form shown in the margin.[1] The validity of this transaction is not attacked or involved. Later, in the dissolution and winding up of the Drug & Chemical Company, Smulyan, by agreement with his partner, became the owner of the interests represented by these six receipts, and still later he transferred three of them to his codefendant, Walksman. These transactions likewise are not challenged and may be assumed to be valid.

[1] About June, 1921, one Mendelsohn, a broker or dealer in such property, learned that Smulyan and Walksman wished to sell, and that one Cohen, of New York, wished to buy. Cohen was doing business as the "Tunnel Trading Company," which then had recognized standing as a wholesale dealer in intoxicating liquors for nonbeverage purposes. Mendelsohn agreed with the vendors upon a price they would accept from or through him, and with Cohen upon a larger price which Cohen would pay. Thereupon the amount of the latter agreed price was sent by Cohen to Freiberg, Mendelsohn notified the vendors, they delivered to Freiberg these six receipts indorsed in blank by them, and he paid them their selling price and paid the balance to Mendelsohn.

---

[1] Delivery Receipt.

Issued to Johnstown Drug & Chemical Company, Johnstown, Pa., for 100 cases Highland rye, quarts whisky bottled in bond, subject to delivery only on return of this receipt.

Permits for this whisky should be made out to the Frieberg & Workum Company, Lynchburg, Ohio, and all papers should be forwarded to the undersigned.

Storage at 15c. per case per month from Jan. 1, 1921.

R. L. Buse Co.

Though the indictment charged a sale for beverage purposes, it is clear from the record that the transaction attacked, if a sale at all, was a sale which purported to be, and so far as appeared was, for nonbeverage purposes, and that the whole theory of the prosecution was that there had been a sale without that permit which should have been obtained by the vendors. Hence, upon the merits of the case, the permit was the vital thing. The vendors had no permit whatever. It would seem that they did not understand that any separate sellers' permit was necessary, and that they had no conscious intention of violating the law, though that would not be controlling.

The Tunnel Trading Company was provided with permits to purchase. The regulations upon this subject provide that any one desiring to purchase shall make application to the prohibition director of his state, giving certain information as to himself, specifying the owner from whom he wishes to buy, and identifying by serial numbers, etc., the packages to be bought; that, in case he does not know the identifying marks upon the packages, he may leave this space blank, to be filled in by the vendor at the time of delivery; that the prohibition director, if satisfied, thereupon indorses his approval upon each one of the five duplicates which the regulations require; that the director thereupon sends all five duplicates to the specified vendor; that upon the delivery of the liquor by the vendor, pursuant to this permit, he shall fill in the necessary identifying description and specify over his signature the date and particulars of the delivery; and that the vendor shall then distribute these duplicate permits among the persons entitled thereto, as provided in the regulations, including one to be retained by him.

The regulations also provide, in general terms, for issuing permits to those who desire to sell; but these are clearly intended, in the main, if not wholly, for those who desire to engage in the business of selling. We find in the regulations no clear intent that a vendor, who is making a single specific sale, is expected or required to have any other permit therefor than the one, several duplicates of which are sent to him by the prohibition director, to be indorsed by him and distributed by him as a part of the consummation of the delivery. Purchase and sale constitute one transaction, neither one can exist without the other, and it would be an anomaly to find that one was regular and the other criminal. Certainly only the clearest warrant in statute or regulations could require it to be held that, when a permit has been issued (and sent to the vendor) for a specific sale by a named vendor to a named vendee, and sale and delivery are had pursuant to that permit, the vendor shall be guilty of a felony because he did not have a separate permit running to himself alone. We are satisfied that no prosecution could be maintained for selling without a permit, where there had been one of the joint character we have described, and where the transaction had been carried out accordingly; and the present case is approximately of this type.

It is the theory of the government, on which it insists and to which it must be held by the indictment and the course of the trial, that this sale was one from the vendors to Cohen. It will be noted that the so-called receipts require on their face that permits be produced to Frei-

berg. Consistently with this requirement and the accepted theory of the sale, the only interpretation which the facts will bear is that the vendors were making a sale through Mendelsohn to his principals, whoever they might be, and that all parties concerned regarded Freiberg as the agent of the vendee to hold the money for him until delivery was had, and as the agent of the vendors to do whatever was necessary to meet the lawful conditions, including making the vendor's indorsement upon the permit, and to make delivery under the permit for the vendor as his unnamed principal. Two sets of permits were sent to Freiberg, each for 300 cases, and he filled them out as if the owner in each transaction, and—it is to be assumed—distributed them according to regulations. If there was fraud in the obtaining of these permits by Cohen, or irregularity by Freiberg in handling them, the record does not suggest that the vendors had any knowledge of such fraud or irregularity, or should carry any criminal responsibility therefor. Except for the imperative theory of a sale to Cohen, the facts might be better interpreted as indicating that Freiberg, who was storing the whisky under a permit for that purpose and who had a permit to sell, was the conduit of the legal title. This was apparently the theory of the parties at the time, since the delivery receipts contemplated that, whenever a completed sale was made, to be accompanied by delivery, Freiberg should be the vendor; but the indictment charges no sale from the vendors to Freiberg.

[2, 3] We do not intend to hold that under ordinary conditions the owner may sell under a permit issued to his undisclosed agent, nor yet that one who holds a permit to sell may rightly use his name as a cover for the transactions of others; but our conclusion in this case depends upon its special circumstances. These so-called delivery receipts were, of course, not the bonded warehouse receipts which under the statute may be dealt in without a permit; whenever a transaction in these receipts amounted to a sale of the whisky, it was required to be in association with a permit. Manual delivery of the whisky evidenced by bonded warehouse receipts is not essential to a complete sale, because by the passing of the receipt there is a sufficient symbolic delivery. Pattison v. Dale, 196 Fed. 5, 115 C. C. A. 639. Not so with these papers. In the first place, they did not identify any whisky; they contained no serial numbers and each only called, in effect, for 100 cases out of Buse's stock in the warehouse. The whisky never was identified by case numbers until it was done simultaneously with the adoption and use of the Cohen-Freiberg permit. In the second place, each receipt on its face evidenced that the transaction was not complete, absolutely entitling the recipient to the possession of the whisky upon conditions which he might perform if he wished. It showed full recognition that, before the transaction could take complete effect by delivery, some interested party must procure the required permit and produce it to Freiberg, who was thereby in effect appointed to act for the parties in interest in participating in the permit. When we observe the peculiar and limited character of these delivery receipts, and that there never was any intention to pass the complete title and right of possession except upon the contingency that a sufficient permit should be had, and

that a permit was had in due form except that the warehouseman was permitted to appear as vendor, we do not think there was any basis for a conviction.

The other questions argued become immaterial. The judgment is reversed, and the case remanded for a new trial.  ·